The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the court is now sitting. God save the United States and its Honorable Court. All right, we'll begin argument this morning in number 24129, United States v. Friend. And Mr. Wagner, when you're ready, we'd be happy to hear from you. Thank you so much, Your Honor. Good morning, and may it please the court, I'm here before the court on behalf of Mr. Friend for the second appeal of his Miller resentencing proceedings to address the reasonableness of a 52-year sentence imposed on a 15-year-old who was under the influence of his more blameworthy family members. The overriding concern we have with the district court's opinion is the simple premise that a child is different, and a case involving the child must be handled differently by our courts. This distinction was not at all apparent in the district court's opinion and sentence in this case. In the first case, the district court imposed a sentence of 65 years, 780 months, five years above the sentence requested by the government. This court vacated the sentence and remanded for resentencing. This court provided the district court with very specific instructions on remand. It mandated that the district court explicitly weigh against the aggravating factors, one, the fact that Mr. Friend was 15 years old at the time of the offense, two, that Mr. Friend would have trouble getting away from the influence of his family members, and three, that Mr. Friend's sentence in relation to his more culpable... The district court was well aware of Mr. Friend's age, was he not? It certainly should have been, but that was not apparent from the decision of the district court. In fact, never in the district court's opinion did the district court ever specifically say that Mr. Friend was 15 years old, and this had implications. Counsel, just back up a second. I mean, the whole premise of this, if he wasn't 15, we wouldn't have had the first Miller resentencing, much less the second Miller resentencing. To suggest the judge didn't know that he was a juvenile, it's a little hard to... I'm sorry, Judge. If I gave that impression, I didn't mean to. Of course, he knew he was a juvenile, and he certainly knew that he was 15 years old, but he didn't acknowledge the specific age of Mr. Friend in his opinion, and he didn't distinguish the fact that a 15-year-old perhaps should be treated differently than a 16 or 17-year-old. Mr. Friend, as a 15-year-old, was on the very lowest end of the spectrum under the federal Miller resentencing, and he was given one of the harshest punishments of any federal Miller resentencing defendants. Mr. Wagner, was... my memory is not that good. Was there evidence presented to Judge Hudson about disparity in sentencing with similar type cases and similarly situated defendants? Thank you, Judge. Yes, we went to the painstaking measures to basically look into every single federal Miller resentencing that has come before the courts. We presented graphs and summaries of each of those cases to the district court. We actually used the services of the Juvenile Law Clinic at the University of Richmond Law School to prepare these materials for the district court, and they did really a great job. Professor McCowell from the hearing presented every single federal Miller resentencing case that they could find, and in presenting that, they showed that the 65-year sentence that Judge Hudson imposed previously was an outline, a significant outline, and now even the 52-year sentence that he imposed... Well, there was a significant reduction in response to that. Of course, yes, a 13-year reduction, and that reduction... I mean, that's pretty substantial. That wouldn't be a sign that the... that kind of a reduction would indicate that the judge was sensitive to a mandate and didn't ignore it, wouldn't it? Well, to the mandate generally of the case being remanded to the district court, but not the specific matters that this court in its last decision gave to the district court to adhere to. For instance, this court said that Mr. Friend would have trouble getting out from under the influence of his family members. This is enough... this is something that the district court never addressed in its decision, never even touched on. Talk a little bit about the influence of the family members. I'm sorry, wait one second. You're suggesting that our prior opinion in this case found that he would have trouble? Well, it was an issue that this court explicitly directed the district court to address on remand. Right, but that's not a suggestion that we made a factual finding to that effect that bound the district court, right? We're just saying these were issues that were raised and the district court needs to consider them. Well, the words of this court were, and I quote, that Mr. Friend would have trouble getting away from the influence of the family members and that the court should address this and that Mr. Friend was less blameworthy, quoting, less blameworthy than his brothers and the district court should address that. So my construction of that is that that was in essence a finding of this court. You all made the decision, Judge. You know what your finding was, but that was my reading of the decision of this court. And then after laying out these three factors for the district court to address, this court said that the court, the district court must explicitly weigh each of those factors. And the district court... Mr. Wagner, what do you do with the fact that the life sentence, and I realize you regard that the sentence that was given of 52 years as very lengthy, but it was still below the advisory guideline recommendation, was it not? It certainly was, Judge, but this case is different than most cases that deal with the guidelines. This case involves the chop in a Miller resentencing, and once a child is found not to be permanently incorrigible, then the guidelines really don't apply. And that's exactly what this case involves and what this court should be concerned with. The guidelines in every federal Miller resentencing case were, as far as I know, were locked, were mandatory locks, and that's why they were brought back for resentencing, because the U.S. Supreme Court determined in Miller and Montgomery that a permanently incorrigible juvenile is the only juvenile that could be sentenced to life under these circumstances. Mr. Friend was found to be an exemplary model of rehabilitation by Mr. Donson, who testified in the first Miller resentencing hearing. The court found that he had rehabilitated himself. He was not permanently incorrigible. And so the guidelines don't necessarily apply to a as in every federal Miller resentencing case. What matters, Judge, I would suggest to the court, are the 3553A factors. And when you balance the 3553A factors, especially 3553A6, when you look at the unwarranted disparity between the 52 year sentence in this case and the sentences in every other federal Miller resentencing case, you see that this, again, is an outline. That this case, that Mr. Friend was subjected to a much harsher punishment than virtually all of the other federal Miller resentencing defendants. Of course, each of these sentences is supposed to be an individualized matter. And it seemed to me that the district judge tried to make it here. But I mean, we can't dance around the fact that Mr. Friend's role in these carjackings and the treatment of these truck drivers was just truly brutal. And when we talked about when you talked about the influence of family members, and that he was more than just a follower, or he was, he was not acting at the behest or command of a family member. And there was one instance in the in one of the carjackings where Eugene, actually, as I understand it had to pull, pull Phillips away. Because he was afraid that Philip was going to kill the driver. So and at least in that instance, I thought the family member was raw, it was acting at almost as a restraining influence on Philip, if you can put it, put it that way. And then the testimony in ja 204, and to to 14, say, Eugene pulled the defendant off the driver at one point, quote, because he frayed, he was afraid his I think that's what bothered the district judge is that there wasn't, this is not an example of passivity. Right. And we certainly acknowledge that. But if you look, and you talk about individualized sentencing judge, and that clearly is something that the district court needs to do. But what we did in presenting the summaries of every single Miller federal resentencing case for the district court was show the facts and circumstances of those cases, the criminal histories of the defendants, and more importantly, the prison records, the rehabilitation patterns of each of those defendants. And one thing that is clear, Judge, is that as heinous and as, as, as, as serious as the criminal conduct was in this case, and specifically by Mr. Frank, he didn't kill anyone, Judge, the trigger man for the murders in this case was one of his brothers. But if you look at every single one of those other cases, they're all notorious, they all involve very serious, violent acts, they all involve murders, which which resulted in life sentences for the defendants. And they all resulted in sentences, almost all resulted in sentences, far lower than what Mr. Friend received sentences between 25 and 40 years, nowhere near the reduction in Mr. Friend received, I want to actually focus on a couple of those cases, for instance, the sparks case, case from the Fifth Circuit, which has been cited by the government in their in their pleadings, Judge, that involved the defendant Sparks ride-and-fall. It involved horrible conduct in prison, an individual tried to escape, his co-defendants strangled the guard unconscious while awaiting trial in that case, and the court in Texas, the District Court, gave Mr. Sparks a 35-year sentence. Clearly, conduct far more egregious than what we have that Mr. Friend personally did. Look at the Thomas case from Maryland in the circuit, a 17-year-old involved in a three-year drug conspiracy. Federal prosecutors linked him to six murders, including being paid to kill a federal grand jury witness. The District Court in that case imposed a 40-year sentence. The Jefferson case, 16-year-old and then 17 in another of the incidents in that case, a firebombing of a home in which five children were killed, and then a gang shooting, an innocent bystander killed. Six bodies in that case, similar to the to the Thomas case. A 50-year sentence, two years less than what Mr. Friend received in this case. One of the things that we pointed out in these comparisons between all of the federal military sentencing is that you had primary offenders who were sentenced much more harshly than secondary offenders. But isn't the Guidelines recommendation, doesn't that take into account the fact that, I mean doesn't that take into account what a sentence should be? In other words, the Guidelines, I assume the Sentencing Commission, when it draws up these recommendations, is fairly aware of the fact that there are going to be individual circumstances and you know different cases before different judges are going to result in some disparities. So I, but I think that the the Sentencing Commission is acting with those disparities as a kind of a background context, and then it comes up with a conclusion which said, okay the nature of this crime is such that we're recommending this particular sentence. And this was in fact not only within the Guidelines but also below. But what I'm wondering is, don't the Guidelines act in the context of knowing that there are going to be variations in sentencing, and yet taking those variations into account, they come up with a recommendation as to severity of the crime and what offense level it recommends. You see what I'm saying? I do judge, and in the standard case that comes before this court, in a run-of-the-mill case that comes before this court, certainly the Sentencing Guidelines would be critical to this judge, this court's review of the case. But I see my time is running out. Can I conclude my response to your question, Judge? Would you like to do it now? Do you want to do it in rebuttal? Go ahead and go ahead and respond now, Mr. Wagner. I'll be happy to hear from you. Thank you, Judge. Just to say, Judge, that in the Miller resentencing context, that the Guidelines really don't matter. And every court that has that have addressed Miller federal resentencings have held that the Guidelines are not what the court is to look to in terms of guiding the sentences in these cases. It's 3553A factors, and those factors in this case, Judge, weigh heavily against the sentence of 52 years. All right, thank you very much, Mr. Wagner, and you have some rebuttal time. And before you sit down, Mr. Wagner, I always like to ask my co-panelists if they have any further questions of you, Judge Floyd or Judge Richardson. Do either one of you have any further questions of Mr. Wagner? No, sir. I will then let's hear from Mr. Cook. I'd like to begin with the disparity point the defendant was emphasizing. As the government pointed out in its 28-J letter filed earlier this year, the Eighth Circuit recently upheld in Barraza a 50-year sentence for a 16-year-old who committed the kidnapping and murder of a The Second Circuit in Portillo recently upheld a 55-year sentence for a 15-year-old who participated in murdering four people in a gang attack. So the defendant's sentence in this case is really not out of line with sentences post Miller that have been affirmed. As to the court's explanation on the disparity, I'd like to that were important for its assessment of the sentence in this case, and that were the sentences of the co-defendants in this case, which were all life and remain life, the guideline range of life, and then the sentences in the other Miller resentencings. And the district judge discussed the testimony that the defendant presented at the resentencing, the most recent one, reviewing the And the court described that as, quote, a major factor. And that's Joint Appendix page 831 in its sentence. And that, of course, fits with the fact that the judge went from a 65-year sentence down to a 52-year sentence. So right there, the judge gives this court a direct statement about what's different in the resentencing and what drove the court's determination. As it said, this is a And they're simply well within the range of what, as Barrazzo and Portillo show, courts have upheld. That also fits with this court's case law, which says that comparisons of defendants is inherently very difficult because there are always distinguishing factors among them and unique circumstances. And so that then leads me to the court's discussion about the defendant's age and the expert testimony that the defendant presented, which was extensive, about how Philip Friend's youth, his circumstances in his family, the childhood that he had would be weighed against the gravity of the crime. And 3553C, which requires a statement of reasons from the court, requires the court to do something akin to saying, well, look, Philip Friend beat John Cummings for six hours. Cummings lost his sight in one eye, hearing in another eye. He testified at the first sentencing that he couldn't even cut grass anymore. And have that level of granularity in discussing the harm to Mr. Cummings versus the defendant's interest in a shorter sentence. And similarly, when it comes to Sam Lamb, the defendant knew already that his family had murdered Soren Kornforth. The defendant himself had beaten John Cummings for six hours and Eugene had had to stop the defendant from killing John Cummings and Judge Payne, the first judge concluded that it was only Eugene's intervention that prevented Cummings' death. And then the defendant put a bag over Sam Lamb's head and taped it and proceeded to beat him for 50 minutes. These are very unique facts. And a court, I don't think, has to, in what is ultimately kind of an incommensurable comparison of the defendant's interest in a shorter sentence, the victims and their family members, very, very serious harms and how those are balanced out and taking into account public safety as well. It's, I think, recognized that this is ultimately a judgment call. What you want to have from the record is a clear indication that the court gave serious consideration, grappled and weighed these competing considerations. Counsel, Mr. Cook, so we send this back on a procedural error, sort of a blue error and own remand, the district court understanding sort of the discussion you've had about the details you provided, reduced the sentence 20%. And I just wonder, you know, you see a lot of these and you may get some insight on what happens when they come back down. Is that an unusual degree of reduction for these sort of blue resentencings or procedural error resentencings? Or is that sort of consistent? Do you have a sense of how we get that degree of a reduction for a blue resentencing? I, you know, I, candidly, I don't know that I could generalize about what happens on failure to explain remands. Sometimes nothing changes, but sometimes the sentence does. And I do think in this case, the judge gave us the reason that really changed the sentence in this case, because I doubt that the judge's evaluation of the harm to the victims, the gravity of the crime and the defendant's age changed that materially. I think what really drove the sentence is what he told us, which is that the defendant's efforts at showing the sentences imposed in other Miller resentencings really made a difference to him. He described that as a major factor. Yes, Mr. Cook, let me ask you this question. I'm gonna be long gone and dead by the time Mr. Friend gets out if this if this Senate stands. Is it appropriate or reasonable to consider the fact that he will be 67 years old when he gets out and he's been in prison since he was a young teenager? I think that that's a factor a judge, it's certainly appropriate for a court to consider. I think that the 60 or 67. I don't think he'd be 67 at the date of his release. I believe that once you take into account good time credits, that it's closer to 60 that he would be released. That is a factor that the court can consider, but it's ultimately wrapped into the broad discretion that a district judge has. And so I don't think that the substantive reasonableness standard review or even the Eighth Amendment standards would allow a court to say that this is a Eighth Amendment violation or that it's substantively unreasonable. And I think that can you just take a second and and on the Eighth Amendment question? Um, first, do you? Do you agree that the Miller issue or maybe Montgomery better phrase includes some term of years if he had gotten a 900 year sentence? So not a not a mandatory life sentence, but a 900 year sentence. Would that have violated? Um, Miller absent encourage incorrigibility finding the department's position, as I understand it, is that a term of year sentence can be an effective life sentence. And we've seen that in cases where, um, for example, in McKinley and Seventh Circuit case, there was 100 year sentence. Um, more. That's what I thought the answer was. But give me some thought, and maybe we don't have to address it here. But just whether George or the department's generally, how do we draw that line? Um, in in determining winning, you know, 900 years doesn't work. Um, you know, 40 years, I presume, would would certainly be be acceptable to everyone. But how do we know where to draw that line? Do we have to look at actual aerial tables? Are we? How are we even supposed to do that? I do think that is one of the very hard questions that that remains after Miller. And I don't think that any court has provided a definitive test. The Third Circuit and Grant came up with the retirement age standard that has been vacated on bug. We don't think that that makes sense that although if you even accepting a retirement age, the sentence in this case, I think, is below that. But, um, similarly, I don't think that some actuarial estimate of life expectancy makes sense. And making projections about life expectancy are very difficult. I will note, though, that the defendants have been any sentences after Miller that have struck down a term of years on the grounds that the term of years was was too long. I don't believe so. I mean, there's the example of of grant, which the panel there did. But that's been vacated on. I'm just wondering if there'd been a court case in response to Judge Richardson's good question. I'm just wondering if there'd been a court case that has has said this term of years is effectively life without parole. And in violation of Miller, even though it's nominally a term of years, I just wondered if there'd been any of those, if there had been any of those cases. I mean, courts have have accepted that sentences that exceed really normal life expectancies, like 254 years, are de facto life sentences, and you need a incorrigibility determination to uphold it under Miller. But for sentences in the range that this sentence is here, so for example, Jefferson and the Eighth Circuit case was a 50-year sentence, not a de facto life sentence. Portillo, 55-year sentence for 15-year-old, that was a Second Circuit case, that was upheld. Barraza, the Eighth Circuit case, a 50-year sentence for a 16-year-old, that was upheld. So this, I don't think this court needs to come up with an ultimate test for when something is a de facto life sentence. It just, in light of Barraza, Portillo, and Jefferson, the sentence here falls within the range that courts have accepted. And, well, I guess the other point to make is, as I understand it, that Miller and Jefferson, they were talking about there not being a mandatory life without parole. I'm not sure that those cases says, you know, you can impose life without parole, but you just can't do it as a mandatory matter. You have to look at the individual circumstances and the like. Is that correct? Yes, I think that's right. I mean, when you're dealing with- I mean, it's not a per se bar to life without parole in the case of a juvenile. It's a question of how a life, whether this isn't a life without parole sentence, probably in light of what you're talking about in the Eighth Circuit. But I did not understand those cases as an absolute bar to mandatory- to life without parole. But I did understand them as saying there has to be an exercise of judgment. And there has to be- you have to look at individual circumstances as a part of the exercise of district court discretion. Is that correct? I agree with that. And I think when you are dealing with a case that is a life sentence, the Supreme Court's pending case of Jones v. Mississippi is going to shed some light on what exactly are the findings needed to post Miller affirm that life sentence. And there the Supreme Court is looking at what sort of in light of the combination of Miller and Montgomery. But this case just simply doesn't involve a life sentence. And so I don't think ultimately it's necessary to answer the question that is before the Supreme Court and Jones to decide this case. Essentially, Barraza, Portillo, Jefferson, those cases, and frankly, this court's opinion came as well, which, again, did deal with the life sentence. Amply support that the court acted within its discretion here. All right. Is there anything further that you have, Mr. Cook? I'm happy to answer any additional questions that the court has. But otherwise, I'll rest on the government's pleadings and ask that the court respectfully affirm the judgment. All right, Judge Floyd, did you have any questions of Mr. Cook that you'd like to ask? No, sir. Judge Richardson, do you have some questions you'd like to ask? No, sir. All right. Mr. Wagner, you've got some time for rebuttal. So we'd be pleased to hear from you. Thank you, Judge. I appreciate that. There are several points that I'd like to touch on. And I'm going to start with the first one. And I'm going to start with a little bit of a refutation here just before I'm speaking. They referenced the Barraza case and the Portillo case. And Barraza, again, was a very, very serious case. A 50-year sentence. Again, a sentence lower than Mr. Friend received. And that child, again, resulting in a 50-year sentence, which is less than the sentence imposed by Judge Hudson in this case. Now, the Portillo case, however, my reading of that case is that was not a federal Miller resentencing case. That was actually the first opportunity that the district court had to sentence Mr. Portillo. You know, I was under the impression that the 3553A factor that dealt with unwarranted disparities in sentencing was significantly aimed at co-defendants within, not entirely, I recognize that, but that it was significantly aimed at co-defendants in a multi-defendant case. And where you're seemingly confronted with people who sort of relatively are culpable to the same degree, and yet one receives a very high sentence and one receives much less. Often that's because of substantial assistance or because some of them have pleaded out. But I thought that was part of what the unwarranted disparity and the, to my mind, doesn't the word unwarranted disparity, not just any disparity, but an unwarranted disparity, is important. Yes. And one of the things you referenced when looking at the different sentences under 3553A6, certainly, in some respects, it applies to co-defendants. But also, this court in McCoy made a finding on national statistics, referencing a district court case, the Bryant case. And in that decision in McCoy, this court talked about the 2018 was 291 months. And the court distinguished that 291 month sentence. This court distinguished that 291 sentence. But average would imply that there are some cases below the average, and some cases above the average. And so the question is, well, why is that? And the reason that there are some cases below it, and some cases above it, which is what an average means, after all, is simply the fact that sentencing remains at heart, a question of the discretion of the individual district, district judge, and sometimes things that may superficially appear to be disparities, are actually the product of individualized considerations in sentencing, and particularly the sense that the judge has with the sense and a grasp of the circumstances of the crime. And more than that, he has a grasp of the characteristics of the defendant, and what kind of person what kind of individual it is. And we can talk about averages and talk about nationwide statistics and everything. But isn't it recognized that that sentencing is supposed to be to a substantial extent, and that's involved an exercise of individual discretion in a particular case by a particular district judge? Yes, sir. I certainly acknowledge I see that my time is is out judge and exceeded by a minute. May I answer that question? And and by answering it address the eighth of issue, I would try not to go on for too long, but I always believe in giving a litigant the last word. So go ahead. Thank you. Well, I will say this judge about disparities in about 3553 a six and avoiding unwarranted disparities in this case, unlike only three other actually two other Miller federal resentencing cases, Mr. Friend pled guilty and accepted responsibility and expressed his remorse from the very beginning of this case and always have apologized to the victims in this case. And with the Eighth Amendment overlay in this case, what the Seventh Circuit said, what the Ninth Circuit said, what the Tenth Circuit said, what seven state Supreme courts said was that a term of years is something imposed in a federal in a military sentencing case is something that has to allow the inmate a meaningful opportunity to return to society. That's what all of those courts said. And in those state court cases, the seven state Supreme Court said that a 50 year sentence does not allow a person who, as a juvenile was sentenced to 50 years does not allow that person a meaningful opportunity that life after prison. And so under the Eighth Amendment and under the rationale of those seven Supreme Court and under the rationale of the seventh, ninth and tenth circuit, this sentence of Mr. Friend is unconstitutional. And we would ask that the court reverse the district court and remand this case back to the district court for sentencing. All right. Do either of my colleagues have any further questions? Nothing for me. All right. All right. I want to thank you, Mr. Wagner and very much. And thank you, Mr. Cook. As we all know, we can't come down and exercise an honored Fourth Circuit tradition of shaking your hands personally. But we do want to say to each of you that we there's no less of an appreciation of the services that each of you rendered to the court. And so thank you both. And the court will take a five minute recess. And then we will head directly into our  Thank you, Judge. The court will take a brief recess for hearing the next case.
judges: J. Harvie Wilkinson III, Henry F. Floyd, Julius N. Richardson